| | |
|---|---|
| RASHID KAMBAROV, | Civil Action No.: 3:23-cv-01103 |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| ACCURATE BACKGROUND, LLC, FIRST ADVANTAGE BACKGROUND SERVICES CORP., INTELLICORP RECORDS, INC., AND QUALITY COUNTS, INC., | |
| Defendants. | |

## COMPLAINT

Rashid Kambarov ("Plaintiff" or "Mr. Kambarov") by and through his counsel brings the following Complaint against Accurate Background, LLC ("Accurate"), First Advantage Background Services Corp. ("FADV"), Intellicorp Records, Inc. ("Intellicorp") and Quality Counts, Inc. ("Quality Counts") (all defendants collectively, "Defendants") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of employment background check reports that Defendants published to Plaintiff's potential employers, which inaccurately reported Plaintiff's vacated conviction without any notice that the conviction was vacated.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendants pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendants are consumer reporting agencies that compile and maintain files on consumers on a nationwide basis. They sell consumer reports generated from their databases and

furnish these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendants inaccurately reported Plaintiff's conviction to his prospective employers without mentioning that the conviction was vacated. Defendant's reporting is grossly inaccurate and untrue.

4.     Plaintiff's conviction was *previously* Vacated by the Oregon Supreme Court.

5.     Plaintiff's prospective employers denied Plaintiff's job applications after receiving employment background check reports from Defendants, which included the inaccurate disposition of the criminal case.

6.     Defendants' inaccurate reporting could have easily been avoided had Defendants performed a cursory review of the widely available underlying public court records from Multnomah County, Oregon regarding the felony criminal record prior to publishing Plaintiff's report to his prospective employer.

7.     Had Defendants performed even a cursory review of the underlying public court records, they would have discovered that Plaintiff's conviction was vacated.

8.     Defendants do not employ reasonable procedures to assure the maximum possible accuracy of the information they report regarding consumers. Defendants' failure to employ reasonable procedures resulted in Plaintiff's reports being grossly inaccurate.

9.     Further, Defendants Accurate, FADV, and Intellicorp do not employ reasonable reinvestigation procedures upon notice of a consumer's dispute.

10.     Defendants committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

11.     Defendants' inaccurate reports cost Plaintiff multiple good paying jobs and job security.

12.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13.     As a result of Defendants' conduct, action, and inaction, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

14.     Further, and as a result of their conduct, action, and inaction, Plaintiff also brings claims against Defendants Accurate, FADV, and Intellicorp for their failure to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – the disposition of the conviction – was inaccurate and should be corrected in the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

15.     Rashid Kambarov ("Plaintiff" or "Mr. Kambarov") is a natural person residing in Portland, Oregon, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Accurate Background, LLC, ("Accurate") is a California corporation doing business throughout the United States, including the State of Oregon and in this District, and has a principal place of business located at 7515 Irvine Center Drive, Irvine, CA 92618. Accurate

can be served through its registered agent, CT Corporation System, at 330 N. Brand Blvd., Ste 700, Glendale, California 91203.

17. Defendant First Advantage Background Services Corp. ("FADV") maintains its headquarters at 1 Concourse Parkway NE, Suite 200, Atlanta, GA 30328 doing business throughout the United States, including the State of Oregon and in this District, and can be served with process by way of its registered agent Corporation Services Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Ga 30092.

18. Defendant Intellicorp Records, Inc. ("Intellicorp") is a Foreign corporation doing business through the United States, including the State of Oregon and in this District. Intellicorp is a Cisive Company, which is a dba of CARCO Group, Inc. Intellicorp can be served at its principal place of business located at 3000 Auburn Dr Ste 410, Beachwood, Ohio, 44122.

19. Defendant Quality Counts, Inc. ("Quality Counts") is an Alabama corporation doing business throughout the United States, including State of Oregon and in this District, and has a principal place of business located at 2616 8th street, Tuscaloosa, Alabama 35401. Quality Counts can be served at its registered agent located at 168 Maple St, West Blocton, Alabama 35184.

20. Among other things, Defendants sell background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

21. Defendants are consumer reporting agencies as defined in 15 U.S.C. § 1681a(f) because for monetary fees, they regularly engage in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment

purposes to third parties, and use interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

24.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

25.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

26.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

27.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

28.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the ones Defendants prepared in Plaintiff's name.

29.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

30.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendants, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

31.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

32.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

33.     Defendants disregarded their duties under the FCRA with respect to Plaintiff's background check reports.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

34.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

35.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

36.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

37.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

38.     Background check companies, like Defendants, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

39.     Given that Defendants are in the business of selling background checks, Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

40.     Defendants place their business interests above the rights of consumers and report such inaccurate information because it is cheaper for Defendants to produce reports containing information that is inaccurate and incomplete than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendants' customers.

_____

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

41.     Defendants report such erroneous and incomplete information because they want to maximize the automation of their report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

42.     Defendants charge their customers the same price for reports that are grossly inaccurate as they do for accurate reports.

43.     Appropriate quality control review of Plaintiff's reports would have made clear that Defendants were reporting Plaintiff's conviction without any notice that the conviction had been vacated.

44.     As a provider of background check reports, Defendants Accurate, FADV, and Intellicorp should be aware of the FCRA requirements and are likely members of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Amazon

45.     On or about the end of April 2023, Plaintiff applied for full-time employment as a warehouse worker with Amazon.

46.     Upon applying to Amazon, Plaintiff successfully completed an interview and passed a drug test.

47.     On or about April 26, 2023, Amazon extended a job offer to Plaintiff for the position to which he applied.  The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

48.     Amazon informed that Plaintiff's start date would be May 10, 2023, pending the outcome of the background check report.

**FADV Published an Inaccurate Background Check Report to Amazon**

49.     Amazon contracted with FADV to conduct background checks, including criminal background checks, on its prospective employees.

50.     On or about April 26, 2023, Amazon ordered a criminal background check on Plaintiff from FADV.

51.     On or about April 28, 2023, in accordance with its standard procedures, FADV completed its employment report about Plaintiff and sold the same to Amazon.

52.     Within that employment report, FADV published inaccurate information about Plaintiff.

53.     Specifically, FADV's employment report about Plaintiff included a grossly inaccurate and stigmatizing Disposition of "Convicted" from Multnomah County, Oregon, which appeared in the employment report as follows:

| | |
|---|---|
| Case Reference # | 15CR02216 |
| Case Date | 20/Jan/2015 |
| Name on File | RASHID K KAMBAROV |
| Address on File | 3335 SE 143RD AVE NULL, PORTLAND, OR |
| DoB on File | XX/XX/XXXX |
| Charge |  |
| Major/Minor Category | |
| Charge Type | FELONY |
| Disposition | CONVICTED |

54.     The Disposition reported by FADV in connection with Plaintiff is inaccurate.

55.     At the time that FADV published the report about Plaintiff to Amazon, that conviction had been vacated.

56.     A cursory review of the widely available underlying public court records confirms that Plaintiff conviction (Case No. 15CR02216) was Vacated on January 31, 2023, by decision of the Oregon Supreme Court (Case No. 17CV44804).

57.     Stated otherwise, FADV sold a report about Plaintiff to Amazon and inaccurately reported the disposition as ***convicted*** rather than ***vacated*** despite the fact that the conviction had been vacated months prior to FADV selling the report to Amazon.

58.     The sole reason the inaccurate Disposition was reported on FADV's report prepared to Amazon about Plaintiff, was that FADV failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

59.     Had FADV followed reasonable procedures, it would have discovered that Plaintiff's conviction has been vacated and would not have reported the same.

60.     In preparing and selling a consumer report about Plaintiff, wherein FADV published to Plaintiff's prospective employer inaccurate information about Plaintiff, FADV failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**<u>Amazon Denies Plaintiff's Job Application</u>**

61.     On or about April 28, 2023, Amazon denied Plaintiff's employment application as a direct result of the conviction reported by FADV.

62.     On or about April 28, 2023, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the Disposition of "Convicted" contained within the subject employment report.

63.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he had a Disposition of "Convicted," in relation to the Amazon position, but also the impact of the same on his future.

64.     Specifically, FADV reported a Disposition of "CONVICTED" without any notice that the conviction was vacated despite the fact that the public record made clear the conviction was vacated. The underlying court records were available to FADV prior to publishing Plaintiff's employment report to Amazon, but FADV failed to obtain or perform even a cursory review of such information.

### Plaintiff Disputed the Misinformation in FADV's Employment Report

65.     On May 1, 2023, desperate to secure employment with Amazon and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with FADV.  Plaintiff disputed via email with FADV.

66.     Plaintiff identified himself and provided information to FADV to support his dispute.

67.     Plaintiff specifically disputed the inaccurate reporting of the criminal record that was inaccurately reported, or at minimum, misleading for the simple fact that Defendant reported the conviction with no indication that it was vacated.

68.     Plaintiff specifically asked FADV to investigate and correct its reporting in any employment report about Plaintiff.

### FADV Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report

69.     As of the filing of this Complaint, Plaintiff has not received a dispute response or updated report from FADV.

70.     FADV failed to issue a corrected employment report to Amazon.

71. Despite Plaintiff's dispute, FADV failed to conduct a reasonable reinvestigation of Plaintiff's May 1, 2023, dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

72. Because FADV failed to issue a corrected employment report, Amazon did not reinstate its job offer to Plaintiff.

73. But for FADV's inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct FADV's erroneous reporting.

74. FADV's false report cost Plaintiff a promising, well-paying job with Amazon.

75. The position with Amazon was full-time with a competitive benefits package, apprenticeships and cover costs of education. More importantly, Plaintiff was excited to with Amazon because he was qualified to successfully perform the work and was passionate about the field.

76. The injuries suffered by Plaintiff as a direct result of FADV's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, FADV's conduct would have given rise to causes of action based on defamation and invasion of privacy.

77. As a result of FADV's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**Plaintiff Applies for a Job with Evraz Oregon Steel Mills**

78.     On or about end of April/beginning of May 2023, Plaintiff applied for full-time employment as a General Helper –Slab Processing with Evraz Oregon Steel Mills ("Evraz").

79.     Upon applying to Evraz, Plaintiff successfully completed an interview, and passed a drug test and physical test.

80.     On or about May 5, 2023, Evraz extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

**Accurate Published an Inaccurate Background Check Report to Evraz**

81.     Evraz contracted with Accurate to conduct background checks, including criminal background checks, on its prospective employees.

82.     On or about May 2, 2023, Evraz ordered a criminal background check on Plaintiff from Accurate.

83.     On or about May 8, 2023, in accordance with its standard procedures, Accurate completed its employment report about Plaintiff and sold the same to Evraz.

84.     Within that employment report, Accurate published inaccurate information about Plaintiff.

85.     Specifically, Accurate's employment report about Plaintiff included a grossly inaccurate and stigmatizing Disposition of "Guilty" from Multnomah County, Oregon, which appeared in the employment report as follows:

| Name | RASHID K KAMBAROV |
|---|---|
| DOB | 06/10/XXXX |
| Case Number | 15CR02216 (MULTNOMAH) |
| Location | STATEWIDE, OR |
| File Date | 1/20/2015 |
| Remarks | VERIFIED BY NAME AND DATE OF BIRTH MATCH |
| Charge | 1 Count(s ████████████ -Felony |
| Disposition | GUILTY |
| Disposition Date | 10/9/2015 |

86.     The Disposition reported by FADV in connection with Plaintiff is inaccurate.

87.     At the time that Defendant published the report about Plaintiff to Evraz, that conviction had been vacated.

88.     A cursory review of the widely available underlying public court records confirms that Plaintiff conviction (Case No. 15CR02216) was Vacated on January 31, 2023 by decision of the Oregon Supreme Court (Case No. 17CV44804).

89.     Stated otherwise, Accurate sold a report about Plaintiff to Evraz and inaccurately reported the disposition as *guilty* rather than *vacated* despite the fact that the conviction had been vacated many months prior.

90.     The sole reason the inaccurate Disposition was reported on Accurate's report prepared to Evraz about Plaintiff was that Accurate failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

91.     Had Accurate followed reasonable procedures, it would have discovered that Plaintiff conviction has been vacated and would not have reported the same.

92.     In preparing and selling a consumer report about Plaintiff, wherein Accurate published to Plaintiff's prospective employer inaccurate information about Plaintiff, Accurate failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Evraz Denies Plaintiff's Job Application

93.     On or about May 11, 2023, Plaintiff received a Pre-adverse action letter from Evraz along with his background check prepared by Accurate in connection with Evraz's position to which he had applied.

94.     Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the Disposition of "Guilty" contained within the subject employment report.

95.     On or about May 19, 2023, Plaintiff was notified by Evraz that his employment application was specifically denied as a direct result of conviction reported by Accurate.

96.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he had a Disposition of "Guilty," in relation to the Evraz position, but also the impact of the same on his future.

97.     Specifically, Accurate reported a Disposition of "Guilty" without any notice that the conviction was vacated despite the fact that the public record made clear the conviction was vacated. The underlying court records were available to Accurate prior to publishing Plaintiff's employment report to Evraz, but Accurate failed to obtain or perform even a cursory review of such information.

### Plaintiff Disputed the Misinformation in Accurate's Employment Report

98.     On May 23, 2023, desperate to secure employment with Evraz and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Accurate.  Plaintiff disputed via email with Accurate.

99.     Plaintiff identified himself and provided information to Accurate to support his dispute.

100.    Plaintiff specifically disputed the inaccurate reporting of the  criminal record that was inaccurately reported, or at minimum, misleading for the simple fact that Accurate reported the conviction with no indication that it was vacated.

101.    Plaintiff specifically asked Accurate to investigate and correct its reporting in any employment report about Plaintiff.

102.    On or about June 20, 2023, Accurate requested the order vacating the conviction.

103.    On the same day of June 21, 2023, Plaintiff sent a copy of the requested document to Accurate.

### Accurate Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report

104.    On June 21, 2023, Plaintiff received Accurate's letter confirming that it had reinvestigated Plaintiff's dispute.

105.    Despite Plaintiff's dispute, Accurate failed to conduct a reasonable reinvestigation of Plaintiff's May 23, 2023 dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

106.    Because Accurate failed to issue a corrected employment report, Evraz did not reinstate its job offer to Plaintiff.

107.    But for Evraz's inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Accurate's erroneous reporting.

108.    Accurate's false report cost Plaintiff a promising, well-paying job with Evraz.

109.    The position with Evraz was full-time with a competitive benefits package, paid training on how to operate heavy machinery and a lot of opportunity for increasing the earning potential.  More importantly, Plaintiff was excited to with Evraz because he was qualified to successfully perform the work and was passionate about the field.

110.    The injuries suffered by Plaintiff as a direct result of Accurate's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Accurate's conduct would have given rise to causes of action based on defamation and invasion of privacy.

111.    As a result of Accurate's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**Plaintiff Applies for a Job with Gentle John's**

112.    On or about April 2023, Plaintiff applied for full-time employment with Gentle John's Moving of Oregon Inc., d/b/a Gentle John's ("Gentle John's").

113.    Upon applying to Gentle John's, Plaintiff successfully completed an interview.

114.    The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

**Intellicorp Published an Inaccurate Background Check Report to Gentle John's**

115.    Gentle John's contracted with Intellicorp to conduct background checks, including criminal background checks, on its prospective employees.

116.    On or about April 27, 2023, Gentle John's ordered a criminal background check on Plaintiff from Intellicorp.

117.    On or about May 24, 2023, in accordance with its standard procedures, Intellicorp completed its employment report about Plaintiff and sold the same to Gentle John's.

118.    Within that employment report, Intellicorp published inaccurate information about Plaintiff.

119.    Specifically, Intellicorp's employment report about Plaintiff included a grossly inaccurate and stigmatizing Disposition of "Convicted" from Multnomah County, Oregon, which appeared in the employment report as follows:

| | |
|---|---|
| Case Number: | 15CR02216 |
| File Date: | 01/20/2015 |
| Court ID: | MULTNOMAH CIRCUIT COURT |
| Case Note: | ADDITIONAL ID INFO ON FILE HEIGHT███████ WEIGHT:████ |
| **Charge 1** | |
| Charge Code: | 163.375 |
| Charge Description: | ██████████████████ |
| Disposition Date: | 10/09/2015 |
| Disposition Description: | CONVICTED |

120.    The Disposition reported by Intellicorp in connection with Plaintiff is inaccurate.

121.    At the time that Defendant published the report about Plaintiff to Gentle John's, that conviction had been vacated.

122.     A cursory review of the widely available underlying public court records confirms that Plaintiff conviction (Case No. 15CR02216) was Vacated on January 31, 2023 by decision of the Oregon Supreme Court (Case No. 17CV44804).

123.     Stated otherwise, Intellicorp sold a report about Plaintiff to Gentle John's and inaccurately reported the disposition as ***convicted*** rather than ***vacated*** despite the fact that the conviction had been vacated many months prior.

124.     The sole reason the inaccurate Disposition was reported on Intellicorp's report prepared to Gentle John's about Plaintiff, was that Intellicorp failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

125.     Had Intellicorp followed reasonable procedures, it would have discovered that Plaintiff conviction has been vacated and would not have reported the same.

126.     In preparing and selling a consumer report about Plaintiff, wherein Intellicorp published to Plaintiff's prospective employer inaccurate information about Plaintiff, Intellicorp failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Gentle John's Denies Plaintiff's Job Application**

127.     On or about May 24, 2023, Gentle John's denied Plaintiff's employment application as a direct result of the conviction reported by Intellicorp.

128.     On or about May 24, 2023, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the Disposition of "Convicted" contained within the subject employment report.

129.    Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he had a Disposition of "Convicted," in relation to the Gentle John's position, but also the impact of the same on his future.

130.    Specifically, Intellicorp reported a Disposition of "CONVICTED" without any notice that the conviction was vacated despite the fact that the public record made clear the conviction was vacated. The underlying court records were available to Intellicorp prior to publishing Plaintiff's employment report to Gentle John's, but Intellicorp failed to obtain or perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Intellicorp's Employment Report**

131.    On May 24, 2023, desperate to secure employment with Gentle John's and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Intellicorp.  Plaintiff disputed via email with Intellicorp.

132.    Plaintiff identified himself and provided information to Intellicorp to support his dispute.

133.    Plaintiff specifically disputed the inaccurate reporting of the criminal record that was inaccurately reporting, or at minimum, misleading for the simple fact that Intellicorp reported the conviction with no indication that it was vacated.

134.    Plaintiff specifically asked Intellicorp to investigate and correct its reporting in any employment report about Plaintiff.

**Intellicorp Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report**

135.    As of this filing of the Complaint, Plaintiff has not received a dispute response or updated report from Intellicorp.

136.    Intellicorp failed to issue a corrected employment report to Gentle John's.

137.     Despite Plaintiff's dispute, Intellicorp failed to conduct a reasonable reinvestigation of Plaintiff's May 24, 2023 dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

138.     Plaintiff reasonably believes that due to Intellicorp's inaccurate reporting in the first instance, Gentle John's formed a negative opinion about Plaintiff. However, and due to Plaintiff's own efforts, Gentle John's agreed to allow Plaintiff to begin work on a trial basis while Plaintiff continued his efforts to secure correction of the report.

139.     But for Intellicorp's inaccurate employment report, Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff regarding the erroneous reporting.

140.     The position with Gentle John's was full-time with a competitive benefits package. More importantly, Plaintiff was excited to with Gentle John's because he was qualified to successfully perform the work.

141.     The injuries suffered by Plaintiff as a direct result of Intellicorp's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Intellicorp's conduct would have given rise to causes of action based on defamation and invasion of privacy.

142.     As a result of Intellicorp's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**Plaintiff Applies for a Job with Elwood Staffing**

143.     On or about April  2023, Plaintiff applied for full-time employment with Elwood Staffing.

144.     Upon applying to Elwood Staffing, Plaintiff successfully completed the application and the interview process.

145.     Plaintiff began working for Elwood Staffing in or around mid-April 2023.

146.     The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

**Quality Counts Published an Inaccurate Background Check Report to Elwood Staffing**

147.     Elwood Staffing contracted with Quality Counts to conduct background checks, including criminal background checks, on its prospective employees.

148.     On or about May 1, 2023, Elwood Staffing ordered a criminal background check on Plaintiff from Quality Counts.

149.     On or about May 1, 2023, in accordance with its standard procedures, Quality Counts completed its employment report about Plaintiff and sold the same to Elwood Staffing.

150.     Within that employment report, Quality Counts published inaccurate information about Plaintiff.

151.     Specifically, Quality Counts' employment report about Plaintiff included a grossly inaccurate and stigmatizing Disposition of "Convicted" from Multnomah County, Oregon, which appeared in the employment report as follows:

**Charge #1:21152519**



| | |
|---|---|
| Charge | ██████████████████ |
| Crime Type | **FELONY** |
| Disposition | **CONVICTED** |
| Statute | **163.375** |
| Plea | **NOT GUILTY** |
| Offense Date | **20150116** |
| Disposition Date | **20151009** |

152.     The Disposition reported by Quality Counts in connection with Plaintiff is inaccurate.

153.     At the time that Defendant published a report about Plaintiff to Elwood Staffing, that conviction had been vacated.

154.     A cursory review of the widely available underlying public court records confirms that Plaintiff conviction (Case No. 15CR02216) was Vacated on January 31, 2023 by decision of the Oregon Supreme Court (Case No. 17CV44804).

155.     Stated otherwise, Quality Counts sold a report about Plaintiff to Elwood Staffing and inaccurately reported the disposition as ***convicted*** rather than ***vacated*** despite the fact that the conviction had been vacated many months prior.

156.     The sole reason the inaccurate Disposition was reported on Quality Counts' report prepared to Elwood Staffing about Plaintiff, was that Quality Counts failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

157.     Had Quality Counts followed reasonable procedures, it would have discovered that Plaintiff conviction had been vacated and would not have reported the same.

158.     In preparing and selling a consumer report about Plaintiff, wherein Quality Counts published to Plaintiff's prospective employer inaccurate information about Plaintiff, Quality

Counts failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

## Elwood Staffing Terminates Plaintiff's Job

159. On or about May 1, 2023, when Plaintiff had already been employed by Elwood Staffing for about two weeks, Plaintiff received a Pre-adverse action letter from Elwood Staffing stating that a decision was pending concerning his continued employment, as a direct result of the background check results reported by Quality Counts.

160. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the Disposition of "Convicted" contained within the subject employment report.

161. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he had a Disposition of "Convicted," in relation to the Elwood Staffing position, but also the impact of the same on his future.

162. Specifically, Quality Counts reported a Disposition of "CONVICTED" without any notice that the conviction was vacated despite the fact that the public record made clear the conviction was vacated. The underlying court records were available to Quality Counts prior to publishing Plaintiff's employment report to Elwood Staffing, but Quality Counts failed to obtain or perform even a cursory review of such information.

163. Shortly thereafter, Plaintiff received a call from the Human Resources department at Elwood Staffing stating that Plaintiff was fired due to the information reported about him by Quality Counts.

## Plaintiff Disputed the Misinformation in Quality Counts' Employment Report

164.     On May 23, 2023, upset, embarrassed, and humiliated at being fired barely two weeks on the job, and worried about the ongoing inaccurate reporting which would assuredly frustrate his employment again, Plaintiff disputed the inaccurate information with Quality Counts via email.

165.     Plaintiff identified himself and provided information to Quality Counts to support his dispute, which also included documents establishing the conviction was vacated.

166.     Plaintiff specifically disputed the inaccurate reporting of the criminal record that was inaccurately reported, or at minimum, materially misleading for the simple fact that Quality Counts reported the conviction with no indication that it was vacated.

167.     Plaintiff specifically asked Quality Counts to investigate and correct its reporting in any employment report about Plaintiff.

168.     On June 5, 2023, Plaintiff received Quality Counts' correspondence confirming that it had reinvestigated Plaintiff's dispute and conceding its error.

169.     Quality Counts updated its reporting of the criminal record to accurately reflect at the time of their investigation that the disposition was no longer "convicted" but rather "pending."

170.     Quality Counts communicated to Plaintiff that it had issued a corrected employment report to Elwood Staffing, however, it seems that correction was too little, too late.

171.     Plaintiff continued to follow up with Elwood Staffing in hopes that the job offer would be reinstated, however, Elwood Staffing did not renew its job offer to Plaintiff.

172.     Plaintiff reasonably believes that due to Quality Counts' inaccurate reporting in the first instance, Elwood Staffing formed a negative opinion about Plaintiff that ultimately biased Elwood Staffing against him and/or moved on to other candidates.

173.     Quality Counts' false report cost Plaintiff a promising, well-paying job with Elwood Staffing.

174.     The position with Elwood Staffing was full-time with a competitive benefits package. More importantly, Plaintiff was excited to with Elwood Staffing because he was qualified to successfully perform the work and had already started working for them.

175.     The injuries suffered by Plaintiff as a direct result of Quality Counts' erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Quality Counts' conduct would have given rise to causes of action based on defamation and invasion of privacy.

176.     As a result of Quality Counts' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.


### CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendants FADV, Accurate, Intellicorp, and Quality Counts)

177.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

178.     Defendants are "consumer reporting agenc[ies]" as defined by 15 U.S.C. § 1681a(f).

179.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

180.     At all times pertinent hereto, the above-mentioned employment reports were "consumer report[s]" as that term is defined by 15 U.S.C. § 1681a(d).

181.     Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment reports they sold about Plaintiff as well as the information they published within the same.

182.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

183.     Defendants willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

184.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendants FADV, Accurate, and Intellicorp *only*)

185.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

186.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id.*

187.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

188.    On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant FADV and requested that Defendant FADV correct the inaccurate information in the employment report that was patently inaccurate, misleading, and highly damaging to him.

189.    In response to Plaintiff's dispute, Defendant FADV failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

190. On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant Accurate and requested that Defendant Accurate correct the inaccurate information in the employment report that was patently inaccurate, misleading, and highly damaging to him.

191. In response to Plaintiff's dispute, Defendant Accurate failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

192. On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant Intellicorp and requested that Defendant Intellicorp correct the inaccurate information in the employment report that was patently inaccurate, misleading, and highly damaging to him.

193. In response to Plaintiff's dispute, Defendant Intellicorp failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

194. Defendants FADV, Accurate, and Intellicorp violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source they have reason to know is unreliable.

195. As a result of Defendant FADV, Accurate, and Intellicorp's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of

employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

196.    Defendants FADV, Accurate, and Intellicorp willfully violated 15 U.S.C. § 1681i in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

197.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants FADV, Accurate, and Intellicorp in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

   i.   Determining that Defendants negligently and/or willfully violated the FCRA;

  ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

 iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

  iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

DATED this 28th day of July 2023.

*/s/Dawn McCraw*
Dawn McCraw, OR #192645
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715-1750
E: dmccraw@consumerattorneys.com
*Attorneys for Plaintiff*
*Rashid Kambarov*
